Filed 2/26/14  Marriage of Geiger and Schrednitz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of LAURA A. GEIGER and TOD SCHREDNITZ. | |
| LAURA A. GEIGER,<br><br>Appellant,<br><br>v.<br><br>TOD SCHREDNITZ,<br><br>Respondent. | F065561<br><br>(Super. Ct. No. 07CEFL02227)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Glenda Allen-Hill, Judge.

Schweitzer & Davidian and Eric H. Schweitzer for Appellant.

Tritt & Tritt and James F. Tritt for Respondent.

-ooOoo-

The parties to this marriage dissolution, Laura A. Geiger (Laura) and Tod Schrednitz (Tod), by and through their respective counsel, informed the trial court that they had reached a final settlement of all issues in the case, including the division of marital property (the settlement).  The terms of the settlement were orally recited on the record before the trial court. Thereafter, pursuant to the trial court's instruction at the hearing, Tod's attorney prepared a proposed judgment to effectuate the settlement and forwarded the same to Laura's attorney, but in the end Laura would not sign it.  Although Laura did not sign the proposed judgment, no objection to the form or content of the proposed judgment was ever presented to the trial court by Laura,[1] even though there was ample opportunity to do so under local court rules.  Additionally, despite their impasse, neither party filed a motion pursuant to Code of Civil Procedure section 664.6[2] to have the trial court resolve any dispute as to the interpretation of the settlement and enter judgment accordingly.  Eventually and instead, Tod's attorney announced by letter that she was submitting the proposed judgment to the trial court for the court's signature pursuant to local rules of court.  At that point, Laura still could have notified the trial court of any alleged error or discrepancy in the proposed judgment, yet she did not do so. Two months later, with no objections interposed to the proposed judgment and no motion filed under section 664.6, the trial court finally signed and entered the judgment "Pursuant to Local Rule."  Laura appeals from that judgment.  She argues the trial court should not have entered the judgment (in the form that was proposed) because it allegedly

---

[1]    For ease of expression, we generally refer to parties alone rather than to their attorneys, except when it is helpful for the sake of clarity to specify the attorney's involvement.  Here, in saying that Laura failed to object, we recognize that since she was represented by an attorney, any objection or failure to object would be something her attorney would do or not do on her behalf.

[2]    Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2.

differed in certain particulars from the parties' settlement relating to the allocation of two financial accounts. Said discrepancy allegedly resulted in Laura being required to make an equalization payment that was not part of the parties' bargain. Under the circumstances of this case, we conclude that Laura's unexplained failure to raise that issue in the trial court, where the matter could have been considered and resolved by the same judge that heard the settlement, forfeited her right to raise it on appeal. Accordingly, the judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

Laura and Tod were married on August 4, 2000. On April 10, 2007, Laura filed a petition for legal separation. On May 10, 2007, Tod filed a response requesting dissolution of the marriage.

Oral Settlement Stated on the Record

On October 27, 2011, the parties appeared for a hearing in the trial court and announced that they had reached a full settlement of the case. Tod's attorney, Deloise Tritt, orally recited the terms of the settlement on the record. She began by referring to a "propertizer" form[3] that was intended by the parties to be made an exhibit to the eventual judgment and that would reflect the terms of the settlement: "We have prepared a propertizer that we will provide to the Court and we will attach a clean propertizer to the judgment which I will prepare ...." As to the parties' real property, Tritt stated "[t]he Hamilton Avenue residence shall be allocated to Laura Geiger as her sole and separate property, [and] the Acorn Road residence shall be allocated to Tod Schrednitz as his sole and separate property." Tritt then stated that the settlement included an equalization payment: "The equalization payment that will result from this division of the property is in consideration of tracing of Tod Schrednitz re separate property inheritance claims and

---

[3] A propertizer is apparently a form sometimes used by family law practitioners to list and value community property and show how it will be divided.

3.

Laura Geiger's separate property contribution claims to various investments." Although the parties contemplated an equalizing payment would be required, the specific amount of such payment was not articulated in the stipulated settlement on the record.[4]

Tritt went on to describe the agreed division of the parties' various financial or investment accounts. Among the many accounts that were allocated under the settlement, Tritt recited that "the Scott Trade account ending 3914 is confirmed to Tod as his sole and separate property" and "[t]he Scott [T]rade account in the name of Laura Geiger ending 5120 is confirmed to Tod as his sole and separate property."

After summarizing the settlement terms, Tritt reiterated that "[t]his is intended to be a full and final settlement" in which a final judgment would follow. Before concluding, Tritt queried Laura's attorney, Eric Schweitzer, whether anything had inadvertently been left out of her recitation of the settlement. Schweitzer noted that one item had been overlooked, which was "a percentage allocation as to item 26." Tritt agreed and proceeded to describe that item. Specifically, as to the "IRA account ending 9215," based on the parties' ability to trace contributions to that account, "we determined that the community's interest … is 91.2 percent of the total account value and, therefore, the 8.8 percent of the total account value is to be treated as Laura's sole and separate property …." With that one oversight corrected, Schweitzer affirmed that the entire settlement had been placed on the record.[5]

---

[4] The parties dispute whether the amount of the equalization payment was set forth on the original propertizer form that was referred to on the record.

[5] In an apparent reference to the original propertizer form, at this point in the proceedings the trial court queried the attorneys as follows: "The Court was provided with a—the Court marked a Joint Exhibit, Roman Numeral I, on yesterday's date. Given the work that you did last evening, is this still a document that you want to be marked as a joint exhibit?" Tritt responded: "No Your Honor." The trial court then said: "And so I will return that exhibit not having been received to—I believe it's yours, Ms. Tritt; is that correct?" Tritt answered: "Yes, Your Honor."

4.

The trial court then asked the parties, individually, whether they heard and understood the settlement, whether it was in fact their agreement, and whether they understood it would become the final judgment of the trial court, and to each question they personally responded in the affirmative. At the conclusion of the hearing, the trial court stated: "Ms. Tritt will be preparing [the] judgment, submitting it to Mr. Schweitzer and then to the Court for the Court's signature." Tritt expressed that she would try to have the proposed judgment prepared "this weekend" and "get it to Mr. Schweitzer next week."

Proposed Judgment Prepared and Entered

Tritt prepared a proposed judgment as directed by the trial court and forwarded it to Schweitzer; however, according to Schweitzer, this was done only "after a lengthy delay."[6] By February 1, 2012, the attorneys were engaged in the process of exchanging several letters in an effort to resolve disagreements or finalize the proposed judgment, but that effort was evidently unsuccessful. According to the superior court docket/register of actions, the proposed judgment was submitted to the trial court (to dept. No. 203) on March 14, 2012. There is no indication in the docket/register of actions that any objection to the proposed judgment was ever filed or transmitted to the trial court.

The proposed judgment delivered to the trial court (for signature) was labeled as a "STIPULATED JUDGMENT, WITH ATTACHED EXHIBITS AND TRANSCRIPT" and a transcript of the hearing containing the parties stipulated settlement was attached. On the standard form portion of the proposed judgment, the box was checked to indicate that the underlying proceeding was "[d]efault or uncontested." The proposed judgment specifically referred to an attached propertizer form, stating as follows: "The parties have listed all of their community property of the marriage in 'Exhibit 1' attached hereto and

---

**6**    It is unclear from the record when the proposed judgment was first provided to Schweitzer.

incorporated herein by this reference.… Exhibit 1 is a Propertizer from which the Judgment terms were recited on the record on October 27, 2011." The proposed judgment further provided that the following "equalization payment" would be required: "In order to effectuate an equal division of the community estate …, [Laura] shall pay [Tod] the sum of $24,679.00."

On May 18, 2012, nearly five months after the settlement was presented on the record, the trial court signed and entered the proposed judgment. Next to the trial court's signature were the handwritten words, "Pursuant to Local Rule."

Local Rules of Court[7]

At this point in our discussion, we digress to describe the local rules of court that were apparently invoked by the trial court. Fresno County Superior Court has adopted local rules of court for family law proceedings. In connection with Tod's brief as respondent in the instant appeal, he requests that we judicially notice two of the rules— i.e., former rule 5.2.16 (renumbered in 2006 as rule 5.2.13) and rule 5.3.6. We grant that request.[8] (See Evid. Code, § 452, subds. (e) & (h).) Former rule 5.2.16 sets forth a standard procedure to be used in preparation of an order after a hearing. Among other things, it provides that the party preparing the order shall mail the proposed order to the responding party for approval within 10 calendar days following the hearing. The responding party would then have 10 days in which to "approve or refuse to approve the order and state alternative language." If no response is received from the responding party, a second letter must be sent (by the party preparing the order) warning that "in five (5) days the proposed order will be submitted to the hearing officer … for signature and

---

[7] Unless otherwise indicated, all further rule references are to the Superior Court of Fresno County Local Rules.

[8] We shall address the remainder of Tod's request for judicial notice later in this opinion.

filing with the court, without further notice to the responding party." This same local rule further provides: "If there is a disagreement, each party shall submit to the court a proposed order with a cover letter delineating the areas of discrepancy. The court will make a ruling after a review of the appropriate record." (Rule 5.2.13.)

Rule 5.3.6 sets forth procedures for preparation of a judgment after trial. It requires as follow: "A Judgment incorporating all of the court's rulings shall be prepared and submitted by the party so ordered. The party preparing the Judgment shall provide a signature line for the other party on the Judgment before the hearing officer's signature." This rule further provides that the procedures of former rule 5.2.16 are to be followed. Specifically, rule 5.3.6 states: "The judgment after trial shall follow the procedures for an order after hearing as set forth in Rule 5.2.1[3]."

Laura's Appeal Filed

As noted, the trial court entered judgment on May 18, 2012. Laura timely appealed from said judgment.

Laura's appeal argues that the trial court erred because the judgment, in the form that it was entered, differed from the precise terms of the parties' oral settlement placed on the record regarding the division of two financial accounts. Specifically, Laura points out that the settlement indicated that the *entirety* of two financial accounts—i.e., "the Scott Trade Account ending 3914" and the "Roth IRA ending 5121" were to be allocated to Tod's side of the ledger in the division of marital property. Instead, the propertizer attached to the judgment reflected that certain portions of the total funds in the above two accounts were treated as separate property and were not included in the allocation to Tod.[9] As a result of this alleged error, Laura was required in the judgment to pay an

_____

[9] Specifically, Laura's appeal referred to item No. 17 on the propertizer form attached as exhibit No. 1 to the judgment, which shows that only $9,786 of account ending 3914, valued at $25,376, was allocated to Tod. Laura's appeal also referred to

7.

equalization payment of $24,679, which, according to Laura, she did not agree to. In short, Laura appeals on the ground that it was an abuse of discretion for the trial court to enter judgment that did not correspond in every respect to the express stipulation of the parties.

Tod's Request for Judicial Notice and/or Findings

In Tod's respondent's brief, he contends that Laura failed to meet her burden as appellant and failed to preserve the issues argued in her appeal by not raising them in the trial court. Additionally, Tod requests that we take judicial notice of several documents that he asserts will provide the necessary procedural context for the trial court's judgment. In the alternative, Tod requests that we make factual findings pursuant to section 909 based on the same documents.

The documents submitted by Tod for judicial notice and/or evidentiary findings included the following: (1) former rule 5.2.16 and rule 5.3.6;[10] (2) a document asserted to be the original propertizer form (with handwritten notes) that both attorneys allegedly relied on and recited from when the settlement was placed on the record, which is presented to show that the clean propertizer attached to the judgment contained the same information as the original propertizer;[11] and (3) the proposed judgment and exhibits attached thereto, together with several letters sent by Tritt to Schweitzer , all of which were originally submitted as a "packet" to the trial court when Tritt requested that the

item No. 21 on the same propertizer form, in which only $49,212 of account ending 5121 was allocated to Tod, after deducting $8,000 as separate property.

[10] As noted previously herein, we have granted judicial notice of the rules.

[11] According to Tod, this was the propertizer that was expressly referenced in the recitation of the settlement and, as such, it sheds light on what the parties intended in regard to the division of the financial accounts. Were we to receive or judicially notice the purported original propertizer, it would essentially turn this appeal into a section 664.6 evidentiary hearing to decide the intention of the parties regarding the terms of the settlement, which we decline to do.

8.

trial court sign and enter the proposed judgment. In support of the request for judicial notice and/or evidentiary findings, Tritt submitted her declaration by which she sought to verify the correctness or authenticity of the matters submitted.

The above mentioned letters, presented as part of Tod's request for judicial notice and/or evidentiary findings, were offered to show what the trial court was informed of when the proposed judgment was signed and also to show compliance with the local rules. We briefly describe those letters in chronological order. A letter dated February 1, 2012, from Tritt's office to Schweitzer stated the proposed judgment was enclosed for signature. A follow-up letter from Tritt to Schweitzer, dated February 7, 2012, stated that if the proposed judgment was not signed and returned to Tritt's office by February 13, 2012, Tritt would submit the proposed judgment to the trial court "without yours and [Laura's] signatures, pursuant to [rule] 5.3.6." A reminder letter, imploring Schweitzer that he and Laura should sign and return the proposed judgment, was sent on March 2, 2012. On March 6, 2012, when the proposed judgment was still not signed, Tritt wrote and warned Schweitzer: "I am proceeding to submit the Judgment … to the court according to the provisions of our local rules, without [Laura's] signature." Tritt's March 6, 2012, letter further stated: "I am proceeding to submit the Judgment to the court with the transcript and the Propertizer which contained the corrections you previously requested. I made all corrections previously requested, and you indicated at that time that these were the only corrections requested, so I will furnish copies of the correspondence to the court with the transcript and a request for the Entry of Judgment in accordance with the transcript and correspondence, without [Laura's] signature." The same letter reflected that Tritt had enclosed copies of former rule 5.2.16 and rule 5.3.6. Finally, on March 13, 2012, Tritt sent a cover letter addressed to the "Honorable Judge Glenda Allen-Hill" (i.e., the trial court below), with a copy of the cover letter to Schweitzer. The March 13, 2012, cover letter stated: "[O]ur office has previously submitted to Mr. Schweitzer the Judgment for Dissolution of Marriage in the above

9.

referenced matter. After several attempts of faxing and mailing the Judgment and the referenced exhibits to Mr. Schweitzer's office for [Laura's] signature, the Judgment was never signed by [Laura]. Therefore, enclosed herewith is the Judgment After Trial pursuant to local rule 5.3.6. Enclosed are copies of the letters sent to opposing counsel, Mr. Schweitzer, in attempts to resolve the issues."

We note the fact that the proposed judgment was forwarded to the trial court on or about March 13, 2012, is corroborated by the docket/register of actions, which shows the proposed judgment was sent to department No. 203 on March 14, 2012.

Laura's Reply Brief

In her reply brief, Laura argues this court should look no further than the record provided by her on appeal: namely, the transcript of the stipulated settlement and the trial court's judgment. Furthermore, Laura objects to Tod's request for judicial notice and for evidentiary findings under section 909. Regarding the correspondence offered by Tod, Laura argues that such evidence did not establish grounds for the trial court to execute the proposed judgment under the local rules of court because the proposed judgment was not timely prepared and served within 10 days of the original hearing. (See rule 5.2.13(B).)[12] Laura states that because the proposed judgment was not prepared on a timely basis following the hearing, the trial court should not have signed the judgment under the local rules. Instead, Laura posits that the better course would have been for one or both of the parties to have filed a motion under section 664.6. We note that nothing in the

---

[12]     Laura's reply brief does not deny she received the correspondence, but argues it was selective and incomplete. As an example of a letter that was omitted, she points out that Schweitzer wrote to Tritt on February 1, 2012, about the lengthy delay in providing the completed proposed judgment and alluded to the possibility of filing a motion under section 664.6. The reply brief states that "if any portion of [Tod's] Motion is granted, then this writer [i.e., Schweitzer] reserves the right to file … competing proofs … like the letter" referred to above. By order of this court filed on December 13, 2013, we have given Laura the opportunity to present such matters to this court.

10.

docket/register of actions or any other part of the record shows that these arguments were ever raised in the trial court, nor was a section 664.6 motion ever filed.

## DISCUSSION

**I.      Request for Judicial Notice and for Evidentiary Findings**

We begin with Tod's request for judicial notice and/or for evidentiary findings.  In addition to judicially noticing the local court rules, we shall make a very limited factual finding under section 909.[13]  Specifically, based on the correspondence, we find that Laura, through her attorney, (i) had ample time and opportunity under the rules to inform the trial court of any objections to the proposed judgment, (ii) was notified by letter on or about March 13, 2012, that the proposed judgment was being submitted to the trial court for signature, and (iii) did not present any objection to the proposed judgment in the trial court or bring any purported error therein to the trial court's attention.  Since the trial court's execution of the judgment was expressly made "Pursuant to Local Rule," we make such findings in support of the trial court's judgment.  (See *Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 41-42 [power created by § 909 is invoked sparingly and only in support of affirming the judgment].)

---

[13]     Section 909 states:  "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court.  The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court.  The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require.  This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

11.

## II. Failure to Raise Issue in Trial Court

"As a general rule, we are limited to deciding those issues that the appellant has preserved for appeal." (*Arabia v. BAC Home Loans Servicing, L.P.* (2012) 208 Cal.App.4th 462, 478.) It is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal that could have been but were not presented to the trial court. (*Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124, 1131.) The rationale for this rule is that a party should bring errors to the attention of the trial court while there is an opportunity to correct them; if the party does not do so, he or she forfeits any objection to the error. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.) "'''''The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.''''''" (*Id.* at pp. 264-265.) As repeatedly emphasized in the case law and treatises: "'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method .… The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppels or waiver .… Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 400, p. 458; *Arabia v. BAC Home Loans Servicing, L.P.*, *supra*, at p. 478; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002.)

Here, Laura was aware of the content of the proposed judgment and that it was being submitted to the trial court for signature pursuant to the local rules of court. Laura had ample opportunity to inform the trial court of any alleged error or discrepancy in the

proposed judgment, as expressly permitted under the rules and yet she failed to do so.[14] She could have, but did not, raise the same objections that she is arguing on appeal in the trial court. During the same time period, she was also aware she could have filed a motion under section 664.6, yet she did not do so. The proposed judgment was in the possession of the trial court for over two months and, during that entire time, Laura failed to raise any possible reason why the trial court should not sign or enter the proposed judgment. If Laura had done so, we have no doubt that the trial court could have easily considered and resolved all such issues. We conclude that Laura has forfeited the issues set forth in her appeal. For this reason, the judgment of the trial court will not be disturbed.

## DISPOSITION

The judgment of the trial court is affirmed. Costs on appeal are awarded to Tod.

_____
Kane, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Poochigian, J.

---

**14** Our opinion is not changed by the fact that the proposed judgment was served on Laura's attorney more than 10 days after the date of the original hearing, since (i) the delay did not affect Laura's ability or opportunity to object to the proposed judgment in the trial court (i.e., there was no prejudice) and (ii) nothing in the record shows that Laura brought the issue of timeliness to the trial court's attention by way of objection.